1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11   KNOLTS HUTCHINSON,                    No.  2:13-cv-00620-MCE-AC

12              Plaintiff,

13        v.                               **MEMORANDUM AND ORDER**

14   CALIFORNIA DEPARTMENT OF
     CORRECTIONS AND
15   REHABILITATION, et al.,

16              Defendants.

17

18        Plaintiff Knolts Hutchinson ("Plaintiff") is a disabled inmate at the California

19   Department of Corrections and Rehabilitation's ("CDCR") California Medical Facility

20   ("CMF").  Through counsel, Plaintiff initiated this action against Defendants CDCR, CMF

21   Warden Vimal Singh, and Correctional Officer M. Scott (collectively "Defendants").

22   Plaintiff alleges violations of Title II of the Americans with Disabilities Act of 1990 ("ADA")

23   and § 504 of the Rehabilitation Act of 1973 ("Rehab Act").  Presently before the Court is

24   Defendants' Motion for Summary Judgment.  ECF No. 29.  Plaintiff filed an Opposition

25   (ECF No. 33), and Defendants filed a Reply (ECF No. 34).  For the reasons that follow,

26   Defendants' Motion is DENIED in part and GRANTED in part.[1]

27   _____

28        [1] Because oral argument would not have been of material assistance, the Court ordered this
     matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

                                          1

1

2

**BACKGROUND**

3       Plaintiff is paralyzed below the chest.  He is unable to stand or walk, and he

4   requires a wheelchair to ambulate at all times.  He has use of his arms and hands, but

5   has limited dexterity.  He was housed at CMF, where Defendant Singh was the warden

6   and Defendant Scott was a correctional officer, at all times relevant to this action.

7       Plaintiff was first issued a large in-cell locker to store his medical supplies.  In

8   early October 2011, however, officials replaced the large locker in Plaintiff's cell with a

9   smaller one.  On October 15, 2011, Plaintiff submitted a formal request to replace the

10   smaller locker with his previous locker because he could not reach down and access the

11   small locker from its position on the floor.  In response to this request, Defendant Scott

12   placed the small, metal locker on plastic milk crates.  On October 17, 2011, at

13   approximately 4:15 a.m., Plaintiff attempted to access the small locker when it fell off of

14   the milk crates and on top of him.  He was trapped under the locker for over an hour.

15       On October 28, 2011, prison officials delivered a larger replacement locker to

16   Plaintiff's cell.  However, the officials positioned the new locker in such a manner that the

17   door opened toward and into Plaintiff's bed, rendering the locker inaccessible to Plaintiff.

18   When Plaintiff alerted prison officials that he could not access his locker, Defendants

19   responded by turning the locker upside down.  Plaintiff again requested a new locker

20   stating that the inverted locker was unstable.  Prison officials responded by turning the

21   locker right side up and removing the door.  Without a door on the locker, Plaintiff

22   experienced problems with other inmates stealing his medical supplies when he was not

23   in his cell and Plaintiff was forced to change his adult diapers and complete his bowel

24   program in the full view of other inmates and correctional staff.

25       Plaintiff proceeds on his ADA and Rehab Act claims.  See ECF Nos. 1, 17.  In the

26   pending Motion for Summary Judgment, Defendants seek summary judgment on both of

27   Plaintiff's claims.  ECF No. 29.

28   ///

1
2

**STANDARD**

3       The Federal Rules of Civil Procedure provide for summary judgment when "the

4  movant shows that there is no genuine dispute as to any material fact and the movant is

5  entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

6  Catrett, 477 U.S. 317, 322 (1986).

7       In a summary judgment motion, the moving party always bears the initial

8  responsibility of informing the court of the basis for the motion and identifying the

9  portions in the record "which it believes demonstrate the absence of a genuine issue of

10  material fact."  Celotex, 477 U.S. at 323.  If the moving party meets its initial

11  responsibility, the burden then shifts to the opposing party to establish that a genuine

12  issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith

13  Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

14  253, 288-89 (1968).

15       In attempting to establish the existence or non-existence of a genuine factual

16  dispute, the party must support its assertion by "citing to particular parts of materials in

17  the record, including depositions, documents, electronically stored information,

18  affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

19  not establish the absence or presence of a genuine dispute, or that an adverse party

20  cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  The

21  opposing party must demonstrate that the fact in contention is material, i.e., a fact that

22  might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby,

23  Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and

24  Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also

25  demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is

26  such that a reasonable jury could return a verdict for the nonmoving party."  Anderson,

27  477 U.S. at 248.

28  ///

1   In resolving a summary judgment motion, the evidence of the opposing party is to

2 be believed, and all reasonable inferences that may be drawn from the facts placed

3 before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at

4 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

5 obligation to produce a factual predicate from which the inference may be drawn.

6 Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

7 810 F.2d 898 (9th Cir. 1987).

8

9               **ANALYSIS**

10

11   Defendants seek summary judgment on Plaintiff's ADA and Rehab Act claims.

12 The ADA and the Rehab Act both prohibit a public entity from discriminating against an

13 individual because of his disability.  Duvall v. Cty. of Kitsap, 260 F.3d 1124, 1135 (9th

14 Cir. 2001).  To prove that a public entity violated the ADA, a plaintiff must demonstrate:

15 (1) he is a "qualified individual with a disability," (2) he was either excluded from

16 participation in, or denied the benefits of, a public entity's services, programs, or

17 activities, or otherwise discriminated against by the public entity, and (3) such exclusion,

18 denial of benefits, or discrimination was by reason of his disability.  Id.  Furthermore, to

19 recover monetary damages under Title II of the ADA, a disabled plaintiff must prove that

20 he or she was intentionally discriminated against by the defendant.  Id. at 1138.

21   Title II of the ADA was modeled after § 504 of the Rehabilitation Act.  Id.  To

22 prove that a public program or service violated § 504 of the Rehab Act, a plaintiff must

23 demonstrate:  (1) he is a disabled individual, (2) he is otherwise qualified to receive the

24 benefit, (3) he was denied benefits of the program solely because of his disability, and

25 (4) the program receives financial assistance from the federal government.  Id.  Because

26 the elements of the ADA and § 504 of the Rehabilitation Act are essentially the same,

27 the Ninth Circuit consistently analyzes them together.  See, e.g., id.; Zukle v. Regents of

28 ///

1    Univ. of Cal., 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).  Accordingly, the Court analyzes

2    the claims together in this Memorandum and Order.

3        **A.    Disability and Public Entity Status**

4        The parties do not dispute that Plaintiff is a disabled individual or that Defendant

5    CDCR is a public entity.  Thus, the first element and part of the second element of

6    Plaintiff's ADA claim are met.

7        **B.    Discrimination**

8        Defendants argue they are entitled to summary judgment because "there was no

9    discrimination against Hutchinson based on the fact that his larger locker was replaced

10   with a smaller one."  Defs.' Mot., ECF No. 29-1, at 4.  Specifically, Defendants argue that

11   because their official guidelines are void of any specific requirements to provide disabled

12   inmates with lockers, there was no discrimination by replacing Plaintiff's large locker with

13   a smaller one.  Id.

14       Defendants read Plaintiff's allegations too narrowly.  Plaintiff's claims are not

15   confined to, nor do they focus on, Defendants' initial decision to replace his large locker

16   with a smaller locker.  In fact, Plaintiff concedes that there is no objective discrimination

17   in replacing an inmate's large locker with a smaller one.  ECF No. 33 at 8.  Rather,

18   Plaintiff contends that the denial of benefits and discrimination was in Defendants' failure

19   to provide Plaintiff with accommodations—specifically, an accessible locker—equivalent

20   to that provided to nondisabled inmates in the custody of CDCR.  Id.  As a result of their

21   mischaracterization of Plaintiff's underlying claim, Defendants' Motion does not address

22   Plaintiff's claim that he was not provided with accommodations equivalent to

23   nondisabled inmates at CDCR.

24       The Court is satisfied that a reasonable jury could find that Plaintiff was denied

25   the benefits of Defendants' services or otherwise discriminated against because he was

26   the only inmate who was not afforded an accessible locker.  As Plaintiff has been a

27   paraplegic since 1990, Defendants were aware of Plaintiff's disability when they

28   replaced his large locker with a smaller one.  Defendants were thus aware that Plaintiff's

1    disability would make it difficult for him to reach down and access a small locker.  If

2    Defendants were not so aware, they were made aware when Plaintiff submitted an

3    administrative request to provide him with his old, large locker because the new, small

4    locker was inaccessible to him.  Rather than provide Plaintiff with a large locker,

5    Defendants responded to Plaintiff's request by stationing the new, small locker on top of

6    plastic milk crates.  Pl.'s Opp'n, ECF No. 33-1, at 2.  While attempting to access the

7    small locker, it fell on top of Plaintiff and trapped him beneath it for over an hour.  Id. at

8    3.

9         According to Plaintiff, Defendants' lack of concern for accommodating Plaintiff's

10   disability did not stop there.  Two weeks after the small locker fell on Plaintiff,

11   Defendants provided him with a large locker but positioned it in such a manner that it

12   was inaccessible to him.  Id.  As detailed above, the locker was then flipped upside

13   down, rendering it unstable and inaccessible, and then positioned right side up with the

14   locker door removed.  Id.  Without a locker door, other inmates were able to steal

15   Plaintiff's medical supplies and Plaintiff was forced to complete his bowel program and

16   change his adult diapers in full view of other inmates and prison guards.  Id.

17        Defendants do not contend that non-disabled inmates were subject to the same

18   or similar treatment that Plaintiff received.  Rather, it appears this treatment was unique

19   to Plaintiff.  If Plaintiff was not disabled, Defendants' actions would not have been

20   problematic.  However, Plaintiff is disabled and confined to a wheelchair, limiting his

21   ability to access his cell locker relative to non-disabled inmates in the custody of CDCR.

22        Thus, construing all reasonable inferences in favor of Plaintiff, the Court finds that

23   a reasonable jury could determine Defendants' actions amounted to a denial of CDCR's

24   services, programs, or activities, or otherwise amounted to a form of discrimination

25   against Plaintiff, thereby satisfying the second element of Plaintiff's ADA claim.

26        **C.    The Basis of the Discrimination**

27        To succeed on his ADA and Rehab Act claims, Plaintiff must also prove that the

28   discrimination he suffered was "by reason of his disability."  Duvall v. Cty. of Kitsap,

6

1   260 F.3d 1124, 1135 (9th Cir. 2001).  The Court is satisfied that a reasonable jury could

2   conclude that this element is met because were it not for Plaintiff's disability, he would

3   not have suffered the alleged discrimination.[2]

4        Defendants proffer two reasons for why Plaintiff's locker was replaced, arguing

5   neither was because of Plaintiff's disability.  Defs.' Mot., ECF No. 29-1, at 5.  First,

6   Defendants contend that their actions were pursuant to and consistent with a penological

7   policy of phasing out large lockers in favor of smaller lockers at all CDCR institutions.  Id.

8   Defendants maintain that because the large lockers were replaced irrespective of

9   whether the inmate was disabled, there was no discrimination against Plaintiff due to his

10  disability.  Id.

11       Again, Defendants read Plaintiff's allegations too narrowly.  Plaintiff does not base

12  his claims on the replacement of his large locker.  Rather, Plaintiff maintains that

13  Defendants' failure to account for his disabled status resulted in a denial of benefits and

14  discrimination when Defendants:  (1) replaced his large locker with a smaller locker,

15  (2) positioned the small locker on top of plastic milk crates, (3) positioned the

16  replacement locker too close to his bed, (4) turned the locker upside down, and finally (5)

17  when Defendants removed the door of his locker.

18       In addition, Plaintiff disputes that his locker was replaced solely because of CDCR

19  policy.  Defendants maintain that CDCR's policy of phasing out large lockers was in

20  place as of 1995.  See Defs.' Mot., ECF No. 29-1, at 5.  All of the events relevant to the

21  alleged denial of benefits and discrimination suffered by Plaintiff occurred between

22  October 2011 and December 2011.  Because of the lapse in time between Defendants'

23  alleged policy of replacing large lockers and Defendants' actual steps in replacing

24  Plaintiff's locker, a jury could reasonably conclude that the decision to replace

25  Defendants' large locker was not based on CDCR's policy.  Instead, a jury could

26  reasonably conclude that the alleged denial of benefits and discrimination surrounding

27  the replacement of Plaintiff's locker was due to his disability, thereby satisfying the third

28  _____
    [2]  Stated otherwise:  the lockers were inaccessible to Plaintiff because of his disability.

1   element of Plaintiff's ADA claim.

2       The second reason proffered by Defendants for replacing Plaintiff's locker is an

3   allegation that Plaintiff was hiding behind the door of his large locker while smoking in

4   his cell.  Defendants also cite this as the reason for removing the door on Plaintiff's

5   replacement locker when it was returned to its upright position.  Plaintiff, however,

6   adamantly disputes this allegation and emphasizes that Defendants failed to provide any

7   disciplinary actions or rules violations reports in support of it.  This amounts to a genuine

8   dispute of a material fact.  Accepting Plaintiff's denial of this allegation to be true, a jury

9   could reasonably conclude that the locker door was not removed for Defendants'

10  proffered reason and take this as further evidence of discrimination against Plaintiff.

11      On balance, the facts before the Court lead it to believe that a reasonable jury

12  could conclude that the alleged denial of benefits and discrimination was by reason of

13  Plaintiff's disability.  The small locker would have been accessible if Plaintiff was not

14  disabled, as he would have had the ability to easily bend over and access the material in

15  his locker.  Similarly, if Plaintiff were not disabled he may have been able to maneuver

16  his body to access the replacement locker when it was positioned with the door opening

17  into his bed.  Although Defendants took action in response to Plaintiff's complaints, they

18  failed to provide what Plaintiff actually requested:  an accessible locker.  On Defendants'

19  Motion for Summary Judgment, the Court must construe all of Defendants' actions in

20  replacing Plaintiff's locker in the light most favorable to Plaintiff.  Applied here, a jury

21  could reasonably conclude that Defendants' actions subjected Plaintiff to "discrimination

22  by reason of his disability," thereby satisfying the third element of Plaintiff's ADA claim.

23  Duvall 260 F.3d 1135.

24      **D.    Intentional Discrimination**

25      To recover monetary damages under Title II of the ADA, a disabled plaintiff must

26  prove that he or she was intentionally discriminated against by the defendant.  Duvall v.

27  Cty. of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001).  The Ninth Circuit applies the

28  deliberate indifference test to determine whether there was intentional discrimination by

8

1  a defendant.  Id.  Generally, the deliberate indifference test "requires both knowledge

2  that a harm to a federally protected right is substantially likely, and a failure to act upon

3  that [] likelihood."  Id. at 1139 (citing City of Canton v. Harris, 489 U.S. 378, 389 (1988)).

4  The Ninth Circuit has applied that standard in the context of ADA and Rehab Act claims.

> 5  When the plaintiff has alerted the public entity to his need for
> 6  accommodation (or where the need for accommodation is
> obvious, or required by statute or regulation), the public entity
> 7  is on notice that an accommodation is required, and the
> plaintiff has satisfied the first element of the deliberate
> 8  indifference test.

9  Duvall, 260 F.3d at 1139.  The second element of the deliberate indifference test is met

10  if the public entity fails "to undertake a fact-specific investigation to determine what

11  constitutes a reasonable accommodation."  Id.  Moreover, "a public entity does not 'act'

12  by proffering just any accommodation:  it must consider the particular individual's need

13  when conducting its investigation into what accommodations are reasonable."  Id.[3]

14       At this stage of the proceedings, the Court is satisfied that Plaintiff has put forth

15  enough evidence for a jury to conclude that Defendants subjected him to intentional

16  discrimination.  Applying the first prong of the Ninth Circuit's test for deliberate

17  indifference when assessing claims under the ADA and the Rehab Act, Plaintiff

18  repeatedly alerted Defendants of his need for an accommodation by requesting that he

19  be given an accessible locker.  Pl.'s Opp'n, ECF No. 33, at 2-3.  Defendants were thus

20  on notice that an accommodation was required.  Because all Defendants were acting on

21  behalf of CDCR and CDCR qualifies as a public entity, Plaintiff has satisfied the first

22  prong of the deliberate indifference test.

23       Applying the second prong of the Ninth Circuit's test for deliberate indifference

24  under the ADA and the Rehab Act, Defendants' following actions may reasonably be

25

26       [3]  Defendants advance arguments that are unrelated to the Ninth Circuit's application of the
deliberate indifference test in the context of ADA and Rehab Act claims.  Defendants' arguments rely on

27  application of the deliberate indifference test in the context of Eighth Amendment claims.  See Defs.' Mot.,
ECF No. 29-1, at 7.  Here, Plaintiff alleges violations of the ADA and Rehab Act, not his Eighth

28  Amendment rights.  Thus, Defendants' analysis of their conduct under the Eighth Amendment test for
deliberate indifference does not aid the Court in resolving the pending Motion.

1   construed by a jury as evidence of failure to undertake a fact-specific investigation of

2   what constitutes a reasonable accommodation for Plaintiff:  (1) replacing the large locker

3   of a disabled inmate in favor of a small locker without accounting for the disabled

4   inmate's inability to access the new locker; (2) placing the small locker on top of milk

5   crates in response to Plaintiff's complaint that the locker was inaccessible and his

6   request for a large locker; (3) replacing the small locker with a large locker only after the

7   small locker fell from the milk crates fell and trapped Plaintiff beneath it; (4) placing the

8   large locker in such a position that it was inaccessible to Plaintiff; (4) flipping the locker

9   upside down thereby making the locker unstable in response to Plaintiff's complaint of

10   inaccessibility due to the proximity of the locker to Plaintiff's bed; and (5) placing the

11   large locker right side up and removing the door, thus exposing Plaintiff's valuables and

12   medical supplies to the prison population and forcing Plaintiff to change his adult diapers

13   and complete his bowel program in the full view of the prison population.

14        Whether Defendant CDCR undertook a fact-specific investigation to determine

15   what constituted a reasonable accommodation for Plaintiff Hutchinson is a material fact

16   of which there is a genuine dispute between the parties.  Plaintiff alleges that all of

17   Defendants' actions relating to replacing his locker demonstrate a failure to undergo a

18   fact-specific investigation into what constituted a reasonable accommodation for his

19   disability.  Defendants, on the other hand, did not claim to have conducted a fact-specific

20   investigation when filing their Motion; it was not until their Reply that they claimed to

21   have based their responses to Plaintiff's complaints on fact-specific investigations.

22   Resolution of this disputed fact will very likely affect the outcome of this suit because the

23   evidence of whether Defendant conducted a fact-specific investigation into reasonable

24   accommodations for Hutchinson is "such that a reasonable jury could return a verdict for

25   the nonmoving party." Anderson, 477 U.S. at 248.  Thus, believing Plaintiff's evidence,

26   Plaintiff may be entitled to monetary damages under the ADA.

27        Furthermore, Defendants' arguments that there was no intentional discrimination

28   are unpersuasive.  In the relevant part of the Motion, Defendants narrowly focus on the

1    absence of discrimination after Defendants placed Plaintiff's small locker on top of plastic

2    milk crates and that locker fell on top of Plaintiff.  Defs.' Mot., ECF No. 29-1, at 7.

3    Defendants admit that the injuries Plaintiff suffered when the small locker fell on him

4    would meet the objective component of deliberate indifference under their view of the

5    law, but argue that there was no deliberate indifference after the small locker was

6    replaced.  Id.  By conceding that some of their actions could objectively be considered

7    evidence of deliberate indifference, Defendants concede that a reasonable jury could

8    find that Plaintiff was subjected to intentional discrimination, thereby satisfying the Ninth

9    Circuit's requirement for monetary damages under the ADA.  In addition, this analysis

10   isolates each of Defendants' actions in connection with Plaintiff's locker as a separate

11   and distinct event.  However, Plaintiff points to Defendants' actions as a whole as

12   evidence that he was intentionally discriminated against by being provided with fewer

13   accommodations than the rest of the prison population.

14          The Court is satisfied that these actions could lead a reasonable jury to conclude

15   that Defendants subjected Plaintiff to intentional discrimination.  As the Court is equally

16   satisfied that a reasonable jury could find that Plaintiff has fulfilled all the elements of his

17   ADA and Rehab Act claims, Defendants' Motion for Summary Judgment is DENIED as

18   to those claims.

19          **E.     Dismissal of Individual Defendants**

20          Although the conduct underlying Plaintiffs claims is attributed to all of the

21   Defendants, Defendants Singh and Scott are named as individual defendants separate

22   and distinct from CDCR.  Defendants argue that neither Title II of the ADA nor § 504 of

23   the Rehab Act authorize suits against individuals.  However, Plaintiff's Complaint makes

24   clear that he is suing Defendants Singh and Scott in their official capacities, not their

25   individual capacities.  Compl., ECF No. 1, at 2.

26          The statutory language of Title II of the ADA does not foreclose suits against

27   public officials in their official capacities.  Miranda B. v. Kitzhaber, 328 F.3d 1181, 1187-

28   88 (9th Cir. 2003).  However, the Ninth Circuit has allowed suits against public officials in

1    their official capacities to proceed only when the suits involved requests for injunctive

2    relief.  See, e.g., id.; Parks v. California, No. CIV.S-05-1397LKKDADP, 2006 WL

3    3097965, at *9 (E.D. Cal. Oct. 31, 2006).  Here, Plaintiff is not seeking injunctive relief

4    from Defendants Scott or Singh; rather, Plaintiff seeks monetary damages.  Accordingly,

5    Defendants Scott and Singh must be DISMISSED from this action.

6         That does not mean, however, that Defendant CDCR is exempt from liability for

7    the actions of Defendant Singh or Defendant Scott.  Claims against persons in their

8    official capacity are considered suits against the entity of which the person serving in the

9    official capacity is an agent.  Kentucky v. Graham, 473 U.S. 159, 165 (1985).  Moreover,

10   when a Plaintiff files suit under Title II of the ADA or § 504 of the Rehab Act, "the public

11   entity is liable for the vicarious acts of its employees."  Duvall v. Cty. of Kitsap, 260 F.3d

12   1124, 1141 (9th Cir. 2001), as amended on denial of reh'g (Oct. 11, 2001).

13   Consequently, the Ninth Circuit applies the doctrine of respondeat superior to claims

14   brought against a public entity under Title II of the ADA and § 504 of the Rehab Act.  Id.

15   Thus, Defendant CDCR, as a public entity, is liable for the vicarious acts of its

16   employees, Defendant Singh and Defendant Scott.

17        Accordingly, Defendants Scott and Singh are dismissed from this action.  Their

18   conduct will be imputed to Defendant CDCR when assessing whether Plaintiff was

19   subjected to intentional discrimination.  If it is determined that Plaintiff was subjected to

20   intentional discrimination, he will be entitled to receive monetary damages from

21   Defendant CDCR, not Defendants Singh and Scott.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

**CONCLUSION**

2

3      Accordingly, Defendants' Motion for Summary Judgment (ECF No. 29) is

4  GRANTED in part and DENIED in part.  Specifically, the Motion is GRANTED to the

5  extent it seeks dismissal of Defendants Singh and Scott; those Defendants are hereby

6  DISMISSED from this action.  However, the Motion is DENIED to the extent it seeks

7  summary judgment on Plaintiff's claims under Title II of the ADA and § 504 of the Rehab

8  Act.

9      IT IS SO ORDERED.

10  Dated:  March 7, 2016

11

12

13  _____
   MORRISON C. ENGLAND, JR., CHIEF JUDGE
14  UNITED STATES DISTRICT COURT

15

16

17

18

19

20

21

22

23

24

25

26

27

28